Thank you, Your Honor. May it please the Court, my name is Frank Busch Bingham McCutcheon. I represent the appellant, Andrew Lopez. We'd like to reserve five minutes for rebuttal. And we'd also like to thank your firm for its pro bono representation. Happy to help. Before defendants threw Lopez in solitary confinement, the Constitution guaranteed him the right to notice of the evidence used to do so and an opportunity to explain himself to the critical decision-maker, whoever that is. Instead, he received late notice and no opportunity to present his views to anyone involved in the gang decision-making process. That alone is sufficient for reversal. Help me. Did he get no opportunity or did he get opportunity too late? I'm sorry? Did he have no opportunity to explain himself, or was he given the opportunity, in your view, too late? No opportunity before anyone involved in the gang decision-making process. There's three agencies. There's classification, which has no role in the process. He did have hearings there. There's the gang investigator and then the SSU. And we have an argument, which I'll get into, about which is the critical decision-maker. Neither of them ever heard from him. I understand correctly. He was taken out of the general population on February 2, 2000, put in administrative segregation. That's correct. Shortly after that, he had some kind of process. Yes. That's a different issue from the one that we're raising here. So what process did he have there? For that, the entirety of the process was that defendants received a phone call suggesting that he might have been a gang member. On that basis, removed him from the general population, told him that the reason was that they were investigating whether he was a gang decision-maker or whether he was a gang member. I'm sorry. Right. Okay. At that point, nothing wrong with that. No. And that's not an issue on appeal. Then what happens next that causes you grief? As he sits in administrative segregation, which is a temporary solitary confinement, they provide almost monthly reviews. It should have been monthly, almost monthly reviews. But the issue That's okay, too. Again, that's not an issue that we're raising. Right. Okay. I'm not fighting with you. I'm just trying to make sure I understand. But When do things go south? Things go south when they complete their investigation and validate him, which puts him in what's called a permanent solitary confinement, where he's been for the last 12 years. You stuck it right there. What's the difference between AG-SED and SHU? Well, the conditions are similar. ADSEG is a temporary solitary confinement. Just a different name on the door, or is there some difference? No, in ADSEG, there needs to be these periodic reviews. Talking about the actual housing unit, he's gotten all this process to be put in AG-SED. Then at some point, they say, okay, from now on, it's not AG-SED, it's SHU. What's the difference in how he's living? There's considerable overlap, I think. In other words, are you saying there's no difference? Well, in his case, they're different prisons, for starters. But I mean, the primary difference is that one- I mean, does he get a TV in one and no TV in the other, or a king-sized bed in one and a king-sized bed in another, or something like that? No. So it's basically the same thing. The day-to-day conditions, I think, are similar, yes. Okay. But the difference is that when you're in ADSEG, that's temporary. He's only held in ADSEG because they're investigating the charge that he's a gang decision- a gang- a prison gang member. And as a result, they're gathering the evidence. So they obviously, when they put him there, they can't notify him of the evidence that shows he's a gang member. So they tell him, from now on, it's not going to be AG-SED anymore, it's going to be SHU from here on out. Right, and that's- And then they give him some kind of hearing after that? No. Not- he never receives a hearing on his validation before either of the potential- That's before. I said after that they give him a hearing. I'm sorry, so- He gets- they tell him you're going to go to the SHU. Yes. Then he gets a hearing sometime after they told him that. Before classification, which has no role in the gang decision-making process. He never receives, either before or after, a hearing before the gang investigator or the SSU agent. Does he get to object to being in the SHU at some point? Yes, after- there is an appeal process after he's validated. Okay, how much time transpires between when he is validated and when he gets his hearing? So he- the gang investigator completes the validation packet in October of 2000. That goes up to the SSU agent in mid-November of 2000. The SSU agent signs off on the validation. The validation comes back in late November of 2000. And at that point, for the first time, they give Lopez the notice of the evidence that they're using to validate him. That- there is an appellate process, but that's separate and that takes time. I don't have the date. I'm having a hard time figuring out- this is the problem I'm having with the case. If Administrative Seg is basically the same as the SHU, which is what I think you're- what you've said, and then they give him a hearing shortly after they just change the nomenclature, it's just a paperwork entry, I'm not sure I understand what exactly the problem is if he gets his hearing after they validate him. Well, the problem is that Lopez is entitled to, before he's validated as a gang member, to know why they're validating him and to present his views on that. Okay, but if the situation changes for the worse, that I see. If it's the same thing, I don't quite get it. Well, the situation does change for the worse because of the timing. So when he's in Ad Seg, it's temporary. So there's a monthly review. When the investigation completes, which it needs to do at some point, he'll either be validated or he'll be returned to the general population. Also, in that situation, classification is a decision maker because they, even while he's being investigated, they could put him back in general population. Once he's validated, though, it's game over. He goes to the SHU, which is a permanent solitary confinement classification, no longer has any authority to move him anywhere, and he's stuck. Let me ask you this in a different way. Has the other side ever argued that there's no practical difference between the opportunity to respond before he gets in the SHU or after? No, they haven't, Your Honor. I think the case law would foreclose that. Specifically, I'm referring to Juarez. Okay, but now, there was a – let me try to move along. There was a jury trial here, right? Yes. And the jury came back with a defense verdict? Yes, Your Honor. Now, what was wrong in that trial as it relates to your arguments? As it relates to the procedural due process issue, the jury was misinstructed on two issues. First, the jury was instructed only that Lopez was entitled to notice, not prior notice. Now, that was an error that's prejudicial because he did receive notice after he was validated. And you asked for a different instruction? Yes. Yes, Your Honor. But Lopez's proposed instruction is in the ER at 265. Right. And the district court's ruling was what? It rejected his proposed order and used the defendant's. Did the district court give a reason? Yes. Actually, you know, I couldn't tell you that it gave a reason on that point, sorry. Okay. I couldn't figure it out. But it did. When it said that it was going to use defendant's instructions, Lopez did object in the record, and that's ER 230. Where he challenges the prior notice issue. The second instructional error is the jury was instructed that it had to determine as a matter of fact the identity of the critical decision-maker in the gang validation process. That's also wrong. The law is clear that the gang investigator is the critical decision-maker in this process as a matter of law. And, in fact, Your Honor just last year affirmed a motion to dismiss based on the fact that the inmate in that case had an opportunity to present his views to the gang investigator. If that wasn't sufficient as a matter of law, there could have been no motion to dismiss on the issue. Now, there was not only a trial. There was a motion for summary judgment, too, wasn't there? Correct. And you're claiming RAND error with respect to that. Yes, Your Honor. Who made the motion for summary judgment, do you recall? Each party made a motion for summary judgment. Including your fellow? Yes. Did Mr. Lopez file a response to their motion? For summary judgment? Yes, Your Honor. If I understand the RAND rule, the purpose of RAND is to tell the other side, a prosaic opposing party, that they have the right to file a response. Well, it's a little bit more than that. It also needs to explain what the costs are, what's at risk in a motion for summary judgment. And, in fact, RAND himself submitted what the dissent describes as numerous voluminous relevant exhibits in opposition to the defendant's motion for summary judgment in that case. I guess what I'm getting at is, since Mr. Lopez filed his own motion for summary judgment, and since he responded to their motion for summary judgment, I'm not clear how this RAND thing would have made any difference one way or the other. Well, that's exactly the harm that RAND is designed to address. I can't tell you what evidence he didn't put forward. There's nothing anywhere that tells us this is what he would have done had he been given a RAND notice. Well, at minimum, he could have submitted his own declaration in opposition to the motion, which was decided primarily based on defendants' declarations stating that they didn't do the things he alleged. However, the ---- He didn't do that in his own motion? He didn't respond to their declarations in his own motion because they hadn't been made yet, but ---- He filed a declaration, didn't he? Yes. Okay. So is there anything anywhere that tells us what he would have done differently had he been given a RAND motion? No, Your Honor, but that's exactly the reason for RAND, is that when RAND says harmless error, which is what we're talking about here, what they mean are claims that are incorrect on their face. For example, in the Solis case, there was a claim that was clearly time-barred on its face. So there's harmless error there because no fact that they could put forward would fix the time-barred issue. Here, though, these are claims that the Court rejected because Lopez did not have sufficient evidence in his response to their motion for summary judgment. That's not what they mean by harmless error. So RAND is a curative requirement that wasn't met in this case, and on that basis, the summary judgment motion needs to be vacated. The summary judgment order, I'm sorry. Going back to the procedural due process issue, though, I think it's important to note that without prior notice, Lopez had no opportunity to have any input into the process, and that's simply not what the Constitution requires. I'd like to read from a decision from Judge Alsup in the Castro case. This is the 2006 order that he issued. It's page 18 of our addendum. He writes, The point of Madrid's focus on the actual decision-maker in gang validation cases is to make sure the prisoner has a chance to present his arguments against validation when it can make a difference. Before higher authorities simply sign off on a decision, which as a practical matter has already been made by the investigator. Well, what I don't quite understand is it would appear that there was a dispute as to who the actual fact-finder was supposed to be here. Yes. That that was sent to the jury, and that would seem to be fine. If it was a question of fact for the jury, that might be fine. Why wasn't it? Well, first of all, the This case. I mean, I can see in a different case it might not be. So, I mean, the rule that emerges, there are two cases, Toussaint and Madrid. In Toussaint, the inmates claimed, or the defense, rather, claimed that hearings before the classification committee were enough, and that inmates were not entitled to a hearing before the gang investigator. The Toussaint court said that's not right. Now, the gang investigator had a different title then, but that's who they were talking about. Second, in Madrid, the inmates said, okay, well, it's great that we're getting this hearing before the gang investigator. But really, it's the SSU agent in Sacramento who makes the final sign-off. So we should get to have a hearing before him. And the Madrid court said, no, even though that argument has superficial appeal, promote form over substance, and is therefore an opportunity to present your views to the gang investigator, is what matters. So after those two cases, every decision that has been issued in this circuit, except for one, has found that the gang investigator was the critical decision maker, always citing back to this authority. And as I said, it's happened on motions to dismiss, which have been affirmed by this circuit. It's happened on motions for summary judgment. This is simply the law. I did say there was one exception. That's the Avenia case, which has been briefed. And that case simply can't present the right rule, because what it does is it looks backwards after the end of a validation and says, yes, the gang investigator investigated, the SSU agent reviewed that, but because the SSU agent was active in his review instead of passive, that makes him the critical decision maker. That kind of retroactive look means that neither the inmate nor the gang investigator would have any idea who the critical decision maker was at the time they were doing their job. And that just can't be the right standard. And it's not the standard that any other case has adopted. Along with the instructional errors that we've discussed, Lopez also filed a motion for judgment as a matter of law on both the prior notice issue and the critical decision maker issue. The Court rejected that motion, and this Court should reverse, because the facts are really not in dispute. We discussed the timeline on the notice point, that in October of 2000, the gang investigators had completed their investigation, had completed their investigation, and rather than giving Lopez the results of that, they sent it off to be finalized. They didn't ever present him that notice until after it was finalized and came back to them. Similarly, on the question of the critical decision maker, both defendants, Johnson and Shaver, the two gang investigators who signed the validation, said that they weren't required to meet with him. And, in fact, they couldn't have met with him because the reports that they made that were designed to give him access to the confidential information in a way that could be shared with him weren't authored until November of 2000, after he'd been validated. Prisoners have to know their rights in advance. Prisoners have to know the charges that they face and be able to rebut those charges against the officials who make that decision. If this case doesn't cross that line, there is no line. Thank you, counsel. Thank you. Good morning. I'm Jose Zaldan Cepeda, Deputy Attorney General for Defendants. I wanted to start by addressing the chronology of the case that Judge Silverman went through. And as Judge Silverman noted, basically the only difference per plaintiff's own description of the case was the place where he was housed before he was validated and after he was validated. And I think it's important to reemphasize what due process requires. Why would that make a temporary situation different from a permanent one? You can say someone is suspended from work and they're at home and then they're fired. You know, there's a whole different thing. They're still not at work. They're still at home. But their status has changed. What's different from that circumstance where we've clearly said there's a predeprivation right in this one? Again, assuming that that's the case, Your Honor, the fact of the matter is he received And Mr. Lopez, he received a hearing and an opportunity to express his views to the critical decision-maker, which is important. No, I understand that part of your argument. I'm just wondering why this saying that it's temporary versus permanent doesn't make a difference in this case. Because the whole reason why there's a constitutional issue, why there's a due process right, is because of the nature of the conditions under which a prisoner is housed. If the conditions are the same, then there's arguably no different due process interest. And that goes back to Turner v. Safley in terms of whether there's, I forget the exact language, but basically if the conditions are different from one housing to another. But getting back to the... I understand your point, though. It's on a continuum since it's in the same place. The question is whether he gets a predeprivation or a post-deprivation hearing. You're not saying he doesn't get any say-so at all, right? That is correct, Your Honor. And plaintiff, and as...  I'm just saying that he's got some right to be able to make a decision from temporary to permanent at some point. He's got some right to object... That is correct. ...under even your construct. That is correct. Express his views. Let me change the subject for a second if I might and ask you about the trial. Yes. Okay. Mr. Lopez wanted to call a guy named Everett Gonzales. Is that right? That is correct, Your Honor. And Everett Gonzales was going to testify, what, that Mr. Lopez has a reputation for helping inmates? Yes. And that he was... Gonzales was going to say he saw a guard basically say that you're... Mr. Lopez is a rat. You're a snitch, yes. Gonzales gets on the stand and takes the Fifth Amendment. Correct. I'm at a loss as to understand how he could be incriminated by those two questions. It's not precisely stated in the record, but basically what it comes down to, and this is what Inmate Gonzales said when Judge Mueller had a colloquy with him about this issue, is that he had his own validation that he was fighting, and it's unclear at what point he was fighting it, and he was concerned that testifying in favor of Mr. Lopez, who had been validated as a gang member, would be held against him in terms of being used as an item of validation. That I get. I don't see how that incriminates him for Fifth Amendment purposes. In terms of the standard for raising the Fifth Amendment in a civil case, what this Court has held, if I could find... The fact that it's awkward or unpleasant or he doesn't want to testify, that's not grounds to take the Fifth. In the civil context, invocation of the privilege is limited to situations where the witness reasonably believes that his disclosures could be used in a criminal prosecution or could lead to other evidence that could be used in that manner. Exactly. I don't see how any of this could be used against him. Judge Mueller's finding was basically that she was concerned that this particular finding could be used in the validation process, which could affect his Davies Corpus proceedings for that. If she's wrong about that or if she didn't even make the proper inquiry, what do we do about that? I think the Court would have to go ahead and look. Because this is an evidentiary issue, I think the Court would have to look at whether there was any prejudice in this particular issue. And the record is pretty clear that this was harmless error. Why would it be harmless? I mean, he's got a witness who says, I heard the guard basically say he's going to retaliate against Lopez. Why would that be harmless? This particular testimony went to the claim against Defendant Bartos. And there was nothing in the record about Defendant Bartos making this alleged comment against the plaintiff. The plaintiff himself was at that situation, at that instance where Defendant Bartos allegedly made the statement. The plaintiff did not testify at trial that Bartos made the statement. So there was no evidence on that particular issue. Moreover, the plaintiff had an opportunity to cross-examine Defendant Bartos and actually ask him, isn't it true that it's bad to call someone a snitch in prison or something to that effect, and Bartos responded yes. But the plaintiff did not actually ask him, did you call me a snitch? The plaintiff did not get on the stand and say, you called me a snitch. Why would he ask him that? I mean, chances are the guy's going to say, no, I didn't. Fair enough, Your Honor. He's got the independent witness. That was the point of the Gonzales testimony, to provide that evidence. Because Mr. Lopez was there, too. He could have provided that testimony. But besides that, there's another reason. I don't understand that argument, that this was the inability to question Gonzales is not prejudicial because he could have gotten the evidence from someplace else? That's correct. Is that the law? I mean, generally, it's already in. So it didn't make any difference that he couldn't get it. He's got the evidence. When we say it's non-prejudicial, we say it didn't make any difference because that evidence was already there. We don't say it's non-prejudicial because that was the only way he tried to get the evidence in. It's not prejudicial because there wasn't an appeal. Mr. Lopez argues that the evidence was the only other point he could have gotten, the only other way he could have gotten this evidence was through his own testimony. But there wasn't even any testimony as to that. But there's another reason why there's a harm. I don't want to belabor that point on that issue, but I want to talk about another reason why it's a harmless error. Mr. Gonzales filed something with the Court a few weeks before trial saying, after he received a subpoena from Mr. Lopez, saying, I can't testify because of health issues and because I'll probably assert my Fifth Amendment. At that point, Mr. Lopez was on notice and could have brought the issue to the Court's attention and said, Your Honor, there's other witnesses that could have this other testimony besides Mr. Gonzales, and therefore I move to go ahead and change my witness list to this. And in fact, Mr. Lopez tried to bring other witnesses on other issues because they were not available, because they were not responding to the subpoenas. But he did not bring to the Court's attention his concern that because Mr. Gonzales could not testify that there was that he needed to bring other witnesses to testify to that issue. So my point is that Mr. Gonzales was not the only evidence that Mr. Lopez could have had on this particular issue. So even if the Court finds that the district court erred in upholding the Fifth Amendment privilege of Mr. Gonzales, it would still have to look at whether the error was harmless. Mr. Gonzales, let me ask you another question that concerns me here. I take your point that they have to prove, he has to prove who the final decision maker is in a case like this, right? Yes. And it looks like a guy named Harrison was the final decision maker or may have been the final decision maker. It depends the final decision maker on what aspect of the case, because there were many decision makers on different aspects of the case. Fair enough. But he's one of the contestants here, right? Yes. For some reason the judge threw him out of the case and I can't figure out why. The magistrate judge determined before the case was served, the claim was served on defendant Harrison, that that particular claim was duplicative of another claim that Mr. Lopez raised. And Mr. Lopez did not make any objections to that particular finding of the magistrate judge's recommendations. So Harrison is now out of the case and then comes to trial and your side argues, well, Harrison was really the decision maker. That doesn't seem right. Well, again, it really depends on the critical decision maker as to what aspect of the case. What the jury found in this particular case, and I think it's really important to go ahead and focus on that because the jury found as a matter of fact that Mr. Lopez had an opportunity to express his views to the critical decision maker. And what the evidence showed was that the ICC, the Institutional Classification Committee, which met with Mr. Lopez after his validation, was the critical decision maker in terms of his housing. So there's sufficient evidence on the record to uphold that jury finding. There's no evidence that Mr. Lopez has pointed to that the ICC was not the critical decision maker on this aspect of the case. And I wanted to cite, I wanted to quote language from this Court's decision in Bruce. Under the Constitution, prison officials must provide the inmate with some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. And that's Bruce 351 F. 3rd of 1287. And here Mr. Lopez got that. There was evidence in the record to show that the critical decision maker for his housing was the Institutional Classification Committee with whom Mr. Lopez met before being transferred to the SHU. I can go ahead and address the Wran notice issue if the Court wants me to. Unless there's any questions, I'll submit. Roberts. Okay. Thank you. Thank you. Thank you. We'll give you two minutes for rebuttal. Thank you, Your Honor. First, the Harrison issue, which the Court asked about, I think is critical because on remand Lopez does need to have every potential critical decision maker. Our view is that he already had that because it's the gang investigator's a matter of law. If the Court disagrees, however, Harrison's dismissal was simply incorrect. The claim was not duplicative because one claim was against Harrison and one claim was not. Now, that's a legal dispositive issue, and he did not need to object to the magistrate's order to preserve the issue for appeal. We made the claim in our opening brief. That's all we need to do. Leaving Harrison out would cause Lopez again to be whipsawed the way that he was in the first trial, where they would say, no, it's not us. Don't worry about his procedural due process rights. It's the empty chair. Second issue, they spent a lot of time talking about Gonzalez, and I'm a little confused. In their answer, they said that his testimony would have been cumulative. Now they say the issue is that there was no evidence. Either way, he's the only nonparty witness who would have testified in the entire case. He was an eyewitness, and Lopez is simply entitled to his testimony. That's all there is to it. I completely agree with the Court that there is no Fifth Amendment issue here. Finally, the – I'd like to point the Court back to the Juarez case as far as what the important steps. And the Juarez case reads Tucson and Madrid and says, in the gang validation process, the important decision is the validation, because that's the decision that finally deprives you of your rights. So the ADSEG, he – they gave him notice that he was being investigated. They investigate him. That's – that is what it is. However, to validate him, they need to give him prior notice. The timing of that is important, because notice before deprivation is the only kind of notice that could provide him any benefit. That's the portion of Judge Alsup's argument that I read to you earlier. The exceptions for providing pre-deprivation notice don't apply. That's the Zinnerman case, which we cited, where there's either a necessity for quick action or it would be impractical. Neither of those is the case when he's already segregated from the general population, and there is a point at which they've compiled their evidence. Thank you. Roberts. Thank you, counsel. Thanks again for your pro bono representation. The case is here to be submitted for decision.
judges: Schroeder, Thomas, Silverman